case, which is 22-972 Williams et al v. Binance. All right. We have Mr. Goldstein. Yes. Good morning, Your Honor. Good morning. And you've reserved two minutes for rebuttal. I will suggest both because of the substantiality of the multiple issues on the appeal, plus we did put out an order asking about an unbriefed jurisdictional question that I expect both sides to be permitted time beyond the original 10 allotted. Thank you. But whatever we go, I'll make sure it's fair to both sides. And, Mr. Goldstein, you have two minutes reserved. Thank you, Your Honor. May it please the Court, Jordan Goldstein of Selendigay Ellsberg for plaintiffs. Binance asks this Court to accept that its cryptoasset exchange operates in a legal vacuum in which it can be used to buy and sell securities without answering to any nation's regulation, a modern-day digital pirate. Unlike many of the factual scenarios that have animated this Court's extraterritoriality precedence, the choice of regulating Binance isn't between applying U.S. law and another sovereign's law. It's between applying U.S. law and no law. Before addressing Morrison, I wanted to begin with the Court's April 10th order asking the parties to consider whether the defendant's filing of a motion to compel arbitration implicates a breach of the District Court's subject matter jurisdiction. And so I'll start with that issue. But, as I said, I do want to leave time to address the merits, in particular the extraterritoriality issues. So, beginning with the District Court's subject matter jurisdiction, the plaintiff's plainly alleged subject matter jurisdiction under CAFA, under the Class Action Fairness Act, as to all the claims, both federal and state, as well as federal question jurisdiction under 28 U.S.C. 1331, as to the federal claims. We acknowledge there is a split between the plaintiff and the defendant in the case law on whether a motion to compel arbitration is properly brought under Rule 12.B.1 and Rule 12.B.3. We believe that Judge Woods in American E-Group v. Livewire, which was cited in the panel's order, has it entirely correct that the FAA, the Federal Arbitration Act, does not divest federal courts of jurisdiction in response to a valid arbitration clause? Counsel, may I just, procedural background, a motion to compel arbitration with respect to all claims under 28 U.S.C. 1331? And all defendants was filed, is that right? Motion to compel arbitration, correct. And was briefed, but undiscussed. Was it briefed at the same time as the remainder? Yes. And just undiscussed by the District Court? Correct, Your Honor. Correct. So, we agree with Judge Woods' analysis that a contractual precondition to suit, whether it's an arbitration clause or venue clause, can be waived by the District Court. And we think that the Supreme Court's Mitsubishi opinion, 473 U.S. 630, which analogizes arbitration clauses to forum selection clauses, and that's something Judge Woods' cite, accurately frames the issue. And all the cases that go the other way, that consider a motion to compel proper under 12.B.1, as Judge Woods notes, apparently do not consider that the FAA does not confer jurisdiction. And so, therefore, a motion to compel arbitration is not proper under 12.B.1. And so, we believe the District Court clearly had subject matter jurisdiction under CAFA and under federal question jurisdiction. So, I'm happy to address any other questions, or I'm happy to move on to Morrison. I think it looks like you can move on. Okay, thank you. So, under Morrison and Absolute Activist, the test for a domestic transaction is holistic. There's no bright line rule, as Judge LaValle noted in his testimony, that states that a domestic transaction is not a domestic transaction. And I'll note at the outset that we're dealing with a new set of technologies. And a defendant that candidly disclaims the liability, disclaims that any law of any other country applies. So, this case is not like City of Pontiac, where Swiss law might apply, or Laguna Biscoia, where Russian law might apply, or Banco Safra, where Brazil or Cayman law might apply, or Park Central, where German law applied. Binance presents its case with a CEO bragging, and this is in our complaint. You've made the point several times now that there's no law that applies. Isn't it likely that there's some foreign law that applies wherever it does business? So, Binance disclaims that it has any physical headquarters. This case is somewhat unique. It disclaims it has any physical headquarters, and that it does not admit that any law applies to it. As to contractual disputes? Has it taken the position that no law applies to it? It certainly has not conceded that any law applies to it. And the transactions at issue here, which are crypto asset transactions, appear to occur over the Internet. And in determining where that occurs from an absolute activist standpoint, where either title passes or where... Excuse me, your client may like that proposition, but where does it come from? Why do we need to concern ourselves with whether any law anywhere applies? What's our concern is whether U.S. law applies. And it doesn't matter to us at all whether China claims that its law applies, which it may very well, or numerous other countries. Your client may declare, we operate on the high seas, and nobody governs us. But, you know, that's not the case. That's not our issue. Our issue is whether U.S. law applies. To be clear, Binance is not our client. I'm sorry, I have the other way around. And for your purposes, the issue is whether U.S. law applies, and you contend that it does. We just don't need to know whether U.S. law applies or not. Isn't that right? Fair enough, Judge LaValle. And so under this court's test for whether U.S. law applies, whether there's extraterritorial reach for the claims we have brought, there are two independent bases for finding that U.S. law would apply. One is whether title passes within the U.S., and we've alleged that in the complaint. That's paragraphs 15 to 22 and pages 168 to 170 of the appellate record. We've also alleged that irrevocable liability under the standard of matching, which occurred, employed in the Choi case of matching, also occurred within the United States. That the trades, according to Binance, according to the position they've taken on this motion, they've argued that all of the trades occurred internal to Binance's computer server. That did not occur on the blockchain. That did not occur on-chain. That occurred off-chain. That it occurred within their systems. What are the factual allegations that underlie the assertion that irrevocable liability incurred, was it? It's at paragraphs 24 to 25 of the second amended complaint, which is appellate record A170 to 170. But I'm asking you, what are the factual assertions? I'm not asking you what the pages are. That the trades occurred on Binance's own servers, which are located in California and tended to by Binance's U.S. employees. In addition... What do you need for there to be irrevocable liability? I mean, you referred to the matching. Is there an allegation that there was a matching here? No. We understand that to be... No. We've alleged that title passed within the United States over Binance's servers in California. All right. So you're not alleging a matching of a buyer with a seller within the United States? No. But to the extent that the court employs the framework in CHOI, the fact that Binance itself has taken the position in their briefing to this court, that the trades occurred within their servers. Binance has itself taken the position that the trades occurred within its servers. And we've alleged that those servers are housed in the United States and tended to by U.S. employees. And we've alleged numerous other factors that the court should consider under the holistic analysis of Morrison in assessing whether the transactions are domestic. That these are U.S. residents, they're purchasing the transactions from within the U.S., pursuant to contracts within the U.S., and at least one... Is it enough that borders and payments are routed through the United States? Is that sufficient? We have not said it's... We have not identified any test as a bright line. It's a holistic analysis under Morrison. And the fact that you have U.S. residents transacting from within the U.S., pursuant to contracts entered within the U.S., at least one of the tokens, that's the EOS token, has already been found by the SEC to be a domestic security subject to U.S. securities laws. And finally, no other nation has a greater claim to regulating Binance than the U.S., which addresses any comity concerns raised in Morrison. Can I ask you a framework question about irrevocable liability and title passing? Is that a... Is that a contracts question? Is that a state law question? What do we look to to know here whether there's an... At what moment so that we can then evaluate where that moment occurred and what led to that moment and where those things happened as to when, in fact, irrevocable liability attached? I mean, I don't... None of the cases, I've looked at all of them, none of the cases talk about that question, but I find myself wondering, what is it that I'm trying to decide here? It probably is... And I don't think this was really briefed by the parties, but it probably is a state law question. And I think the courts could look to some of its precedents in the Blue Sky context. There's the FH of AB Nomura case, which involved Blue Sky claims, and... Does it matter what the terms of service say here? No, it does not in the sense that, to the extent transactions are occurring within the United States, and I don't see a way to change by operation of law where the irrevocable liability is attached simply by contracting. There are  I mean, if we were to look at a trade structure based in the U.S., we would certainly take a position that that trade is occurring within the United States, and certainly Morrison would apply. I guess it could get more complicated as to the Blue Sky claims and specifically where those claims arise, but there's certainly precedent. Could it be as simple as an offer and an acceptance? Apologies, can you just repeat? It's a contract, and in terms of where... Is that what we mean by matching, or does matching mean something other than that? So in the Troy case, matching, which was an exchange case, the court looked to where the transaction became final, or at least where the party trading could not back out of it. And it appears that that point occurred at the instant of the buy and the sell offer being matched. That occurs over, according to Binance's position, its computer infrastructure, which is housed in the U.S. And so given that Binance does not have an office somewhere else, and given that the infrastructure appears to be based in the U.S. and attended by U.S. employees, that appears to occur within the United States. And as I said, there's other factors that point to U.S. law having a purchase here, having an application. But to that offer acceptance or matching, I thought you said a few moments ago that wasn't the position. You're not taking the facts, which confused me. The question, I thought, was whether we pled a matching occurred. And I said that what we pled was that title passed within the United States over Binance's computer servers, to the extent the court employs... And that's a basis for finding extraterritoriality jurisdiction under Morrison, where title passes. What does it mean for title to pass here? And the same question about what law controls it? I see it as largely indistinguishable, candidly, between matching and... In this case, where there's... When does title pass? At the time the offer is accepted. Is there anything in the complaint that alleges when an offer was accepted? Say that one more time, Your Honor. Does the complaint have allegations as to when, where offers were accepted? Yes. The allegation is that the offers were accepted in the plaintiffs from the states in which the plaintiffs transacted, which are either Texas, Nevada, Puerto Rico, other states enumerated in the complaint. But you're saying that title passes by operation of Binance's computers? And you say that those computers are... Are you... Do you allege... Does the complaint allege that they are entirely located within the United States? No. We locate... We allege that they are significantly located in the United States, and that Binance... Then how does that... How does that... How does that allegation ensure that these particular passings of titles might not have occurred outside the United States on computers that are located elsewhere? It certainly permits a plausible inference on a motion to dismiss that the location where a transaction that occurred in Texas occurred over a computer infrastructure located within the United States, given a significant amount is housed in California. It would be a much less plausible inference that that matching or that liability passed in a computer located in China, for example, given the transactions initiated within Texas. So, again, at the motion to dismiss phase, it was erroneous for the district court to decide, as a matter of law, that these allegations did not suffice, particularly given the other items which we've identified in terms of where the plaintiffs were located, where the contracts were initiated, and that at least one of the tokens has been found by the SEC to be a domestic security subject to U.S. law. And so you would propose a holistic analysis comparable to what Judge Seaberg does in the Northern District of California case? So it's... You sort of look at all of these factors in the mix. You know, matching itself is not determinative, or where the first validation on the blockchain happened. You look at everything and get a gestalt, or what is it that you do when you look at everything? I think it's important to note that this case is different than some of the other blockchain cases where the transactions clearly occur on the blockchain. The position that Binance has taken, and we don't dispute this, is that the trades occurred within their infrastructure, and therefore looking to the last node to validate or so on, probably not the right approach in this context, given the concessions they've made. So in this context, where they concede that the trades occurred within their system, then the appropriate place would be to look to where is that system located, where is that infrastructure located, where are the folks tending that infrastructure located, all of which we've alleged are predominantly within the U.S., and also to look at what are the securities being transmitted, unlike City of Pontiac where these were foreign-issued securities. These are, at least the EOS token was issued domestically, the U.S. SEC has applied its law to them, and... I mean, I think for purposes of this motion, we have a concession that these are securities, right? For purposes of the motion, Binance has not challenged it. I think that's probably the most accurate way to put it. Right. Okay, I'm sorry, I interrupted. No, no, no, I finished my thought. So, just for clarification, so from your position, in light of the posture we're in, is that the validation on a blockchain, that's all irrelevant to the Morrison analysis? It's...I think given the concessions Binance has made, which is that the trades occurred within their infrastructure, in light of the allegations we've made in paragraphs 24 and 25 of the Second Amendment complaint, that the infrastructure is housed significantly within the U.S., given the preponderance of other factors within the U.S., plaintiffs located in the U.S., entering into contracts in the U.S., domestically-issued token, and no other country having a better claim to applying its foreign law, unlike Laguna Fuscoia and City of Pontiac and so on, it is appropriate to reverse the district court on its Morrison ruling and permit these claims to be brought in a U.S. court. Do you want to address statute of limitations? We would need to...for you to prevail, you'd have to convince us that the district court was both wrong on extraterritoriality and on at least some of the... for you to prevail in any regard on some of the statute of limitations conclusions. I'd like to respectfully disagree with one point of that, Your Honor. As to the State Bluesky claims, that is incorrect. State Bluesky claims, the Texas claim, has a three-year statute of limitations. The claims were clearly brought within three years. And under CAFA, the jurisdiction for state law claims is not supplemental. It's original under the Class Action Fairness Act. And so if you reverse a Morrison, we do go back to the district court with valid state law claims. Appreciate that clarification. Statute of limitations, as distinct from a statute of repose, accrues only after a sale. Prior to that time, there is no claim to bring. And in the words of Judge Friendly, it would be unreasonable to permit the statute of limitations to run before a claim has arisen. And I point the court to City of Pontiac v. NBIA, the other City of Pontiac case, which held that a statute of limitations commences only after a claim accrues and a claim accrues only after it can be pled. No claim could have been pled prior to a sale. Any of our plaintiffs would have lacked Article III standing had they sought to bring a claim. Therefore, there was no accrual. Therefore, the statute of limitations did not run until they made a purchase. To the extent that there's a concern about some outer limit on liability, that is supplied. Congress has supplied that through the statute. Solicitation cannot sustain a claim without a sale. I apologize, Your Honor. Solicitation cannot sustain a claim without a subsequent sale. I think that would be very difficult, to bring a claim based purely on solicitation without a sale. I don't know what the injury... I think there would be an Article III standing problem, candidly. We don't have this issue. Our plaintiffs all did purchase, but without a purchase, I don't see how there would be an injury and how there would be standing, candidly. And the disk and reliant argument, that's your Securities Act... That's your primary argument with respect to the Securities Act claims. The Exchange Act claims, you're not... What's the thrust of the argument there? Sure. So I do think that, although I recognize Diskin and Wiggin are 12A1 cases, not secured, not Exchange Act cases, I do think the logic of those fully applies to the Exchange Act. You can't expire the statute before the claim could be... Yes. And to be clear, City of Pontic v. MBIA, I believe, is an Exchange Act case, is a 10B5 case. So I think the courts, though they haven't linked Wiggin and Diskin into the Exchange Act context, I think that logic certainly follows, that until there's a sale, until there's an injury, the claim should not accrue and the statute should not run. The other point I'll note on the Exchange Act is that each of the contracts at issue, which is the individual purchase and sales, were all executed within a year. So you dispute that, what you just said there, whether it's the individual purchase and sales that are the contract or the terms of service, that's the relevant contract, right? Why are you right? So there certainly is a dispute. I just want to add one point, then let me answer your question. We also allege, and this is on our reply brief at page 26, that the amended terms of use were all entered within a year of the suit. So even if the terms of use did apply from a timeliness standpoint, the Federal claims would be timely, whichever way you look at it. In terms of Your Honor's question, which is, which is the right contract? We've alleged clearly, and this is at paragraph 375 and 386 of the Second Amendment complaint, that the contracts we are seeking to void are the individual ones that were entered into in connection with each sale. And just by analogy, if I have an Amazon Prime membership, when I log on to Amazon to make a purchase, each of those purchases results in a separate contract with Amazon. The applicable contract is not the Amazon Prime membership I entered into five years ago. The applicable purchase contract is the one that governs each particular sale. And so that's the right analogy here. Candidly, there is an absence of case law that we found identifying this specific issue. It's obviously not before this Court right now. It will be before this Court in a different appeal involving the Coinbase appeal. The only thing before this Court right now is the timeliness. And these claims are timely, whether you look at the purchase contracts, which were within a year, or the amended terms of use, which were also within a year of suit. Okay. Let me ask you, if somebody buys a security on a securities exchange from a third person, not buying it from the exchange, but buying it from somebody else, in the circumstances in which the exchange takes a commission and there's a violation of law, whether it's a – well, let's say the violation of law is that the security is unregistered. Is there a claim against the exchange for the sale of an unregistered security? If there were an exchange, and obviously most of the major exchanges, as far as I'm aware, do not sell unregistered securities. But if an exchange sold an unregistered security and it promoted it and took a commission, that would, I believe under the Court's precedence, including, I note, the Wilson case, it would be a statutory seller. Thank you, Mr. Goldstein. Thank you. Counsel, tell me how to pronounce your name. Rohanda. Go ahead, Mr. Rohanda. May it please the Court. The federal securities laws obviously only apply domestically and that's the Supreme Court's ruling in Morrison and its progeny including a number of Second Circuit cases. The same rule applies with respect to the state statutes here. And importantly, this is not a jurisdictional issue. It's what types of transactions are covered by the actual securities laws. And it's very clear that they cover one of two things, either transactions listed on a domestic exchange or domestic transactions in other securities. And we would submit that this case involves an absolutely straightforward application of Morrison and this Court's rulings that have interpreted it. Where does irrevocable liability attach? At matching. And where does matching happen? Matching happens on the platform and it's very clear from the record. From the record it says, if all in the terms of use, which they've incorporated by reference into their complaint, the terms of use say, if all or a portion of your order is matched with another user, then the services, Binance, will execute an exchange, which they call, in quotes, a trade. And in terms of it being irrevocable, it's absolutely crystal clear. You may only cancel an order if such cancellation occurs before your order has been matched with an order from another user. And that once your order has been matched with an order from another user, you may not change, withdraw, or cancel your authorization for Binance to complete the order. It couldn't be clearer that at the point matching occurs, a trade occurs, and irrevocable liability attaches. So Binance's platform is putting together a compatible offer and acceptance of that offer. Yes, yes. And where does that occur? On the platform, which is not alleged anywhere in the complaint and wasn't argued today. That is not a domestic exchange. Where do platforms exist, just generally speaking? Well, this is online. This platform is, in effect, online. Right. And online doesn't have a territorial existence? Is that Binance's position? Well, I think, Your Honor, the Court respectfully does not need to decide that. The question the Court needs to decide is whether that existence is domestic, is within the United States. It doesn't need to find if it's, as they've alleged, Malta or Japan. They've alleged at various points in their complaint that it was headquartered here and headquartered there. Our point would be to satisfy the Second Circuit Authority, Absolute Activist, CHOI, City of Pontiac. They have to allege that that platform, that online occurred, that that match occurred in the U.S. So, would this be sufficient if allegations say that the matching occurs via Binance's servers that is, it's being processed on servers that sit in California? No. Would that be sufficient? No, that would not be sufficient. And why not? Well, first of all, they have not argued that the exchange or the platform, the platform, I should say, is domestic. And so, by conceding that point, they're not saying it's a domestic exchange, and by putting into... So you moved away a little bit from my question. No, no, I'm... But just answer that and then make the point about their allegations. I'm just going to assume that the allegations are that the matching is processed, matching that we've discussed what that means, is processed on servers that sit in California. No. They've alleged that there are servers. Right. So assuming that's the allegations, is that sufficient? No. Because what they... I guess I'm not understanding whether the allegation is they have no ability to execute a change outside the United States. I'm saying here's a... Here's a contract. Purchase and offer acceptance. There's some coding or somewhere that processes that. That coding, that process occurs on a server in California. Is that hypothetical allegation, I'm not saying it's what was made here, would that hypothetical allegation be sufficient? That hypothetical allegation would be sufficient if the only way that they platform could execute the trade was within the United States, which is not, clearly what is not alleged, it's counterfactual here. They say there are some servers in the U.S. So my hypo would be sufficient. If we're only talking about one contract and it's on a server that sits in California and only sits in California and there are no other servers involved, would that be sufficient? I think you're saying yes, but that's not the allegation here. That's not the allegation and also the question would be where are irrevocable liability attached if you're saying it's attached in the... I guess if I can ask a clarification on the hypothetical. Are they alleging in that case that the exchange is domestic? Because it seems to me the irrevocable liability and the question of a domestic transaction and a domestic exchange have kind of collapsed in this case. Which is you can't have an exchange, you can't have a transaction, a trade which is matched on the Binance platform and say it is a domestic transaction when you have also said we have not pledged that it's a domestic exchange. It sounds like you're arguing that no transaction on Binance could be deemed domestic. Well, it could if it was a domestic exchange. By that you mean both the buyer and the seller are domestic, then it would be covered? No, definitely not. The court's been clear on that. I'm having a hard time understanding when there would be a domestic match on the Binance platform. If it were a domestic exchange. If it were a domestic exchange. When is it a domestic exchange? Well, first of all, they haven't pledged and they disclaimed pleading it so they haven't pledged. What do you mean by it? I think Your Honor set the hypothetical which is if the only way that trades can be matched and executed would be within the United States, then that would be where the transaction is. Meaning where the servers that compute that process a matching. Where the servers are that run the website. Where the matching occurs. I guess it's not totally a function I suppose of where those servers occur. The servers are everywhere. There might be other facts in terms of that might be relevant, but it's really where the matching occurs. Where that irrevocable liability attaches. What I would say is if it can occur in the U.S. It would help me understand it if I could envision a situation where the matching occurs domestically on this platform. The argument is if they haven't alleged enough, what more should they have alleged? It's not that they haven't alleged they've essentially disclaimed it. In fact, their allegations are to the contrary. That the platform is not in the U.S., but they also allege a lot of foreign connections so it's not as if they could just allege this. They, in their own complaint have said the platform does not exist in the U.S. and exists globally. It's a global exchange. It's not necessary to argue that the matching, that the conclusion of the transaction, the instant in which irrevocable liability occurs and the contract is completed so that no one can back out that this occurs on your computers which are in major part in the United States. I asked about what if some of them are outside the United States? Council responded that the mere possibility that the transaction that the operation of the computers happened outside the United States is insufficient to defeat the reach of the statute if the greater likelihood is because of the predominance of U.S. location of the computers is in the U.S. Maybe I misunderstood what he was saying. That was my understanding. You're saying and you're taking a contrary position saying that it can only be if all the computers if all the computing capacity resides exclusively in the United States so there's no possibility that the matching or the conclusion of the transaction could have happened outside the United States. Am I correct in understanding how the two sides are arguing this issue? Well I would put it slightly differently, Your Honor. I would say that it's their complaint they're the master of their complaint and they have not alleged that these trades occurred and could have only occurred in the U.S. They have said this is a global exchange. He acknowledged that they're not saying they could only occur in the U.S. He's saying that the great probability is that they occurred on computers in the U.S. because of the predominance of finance computers in the United States. Well I don't think they've alleged there's a predominance of computers for finance in the United States that's outside the complaint I think what they've alleged is they do not say that the platform is a U.S. platform a U.S. exchange and that they acknowledge it has a global presence. They acknowledge that headquarters and other at various points in time they assert it had headquarters in foreign states. It's not in their complaint or in their briefing that they're saying this occurred these trades occurred on a platform over servers in the United States. That's just not what they've alleged. What does it mean for a platform to be in the United States? What makes a platform be in one place as opposed to another? Well it's very clear I mean I think there are domestic exchanges, New York Stock Exchange and those that are actually physically here and this is not one of those and they don't even allege that it is. Right but we have we're either talking about securities exchange on an exchange or other domestic securities we don't have an exchange we don't have a securities exchange right? Right. So there must mean something in the statute. I'm sorry well the interpretation what must be, I'm sorry it's possible for there to be a platform that matches buyer and seller that's not an exchange. Not a Right. Yes. Absolutely. And they haven't alleged that that platform, they've alleged the contrary not that that platform is not in the United States but that that is a global platform that has presence elsewhere and they don't allege that this transaction occurred over exchange, over U.S. servers and the fact that even if it I think this court's cases are clear which is even if payment orders or other things are routed through U.S. computers that that's not enough to confer jurisdiction and that's clear from I think City of Pontiac and Luganos Gaia and other cases and what is clear is under CHOI matching occurs when the, when revocable liability occurs on the platform and here the platform is not only not alleged to be a U.S. platform it's alleged to be a global platform and there's no allegation that these transactions occurred on on the U.S. in the U.S. there's no allegation that they occurred in the U.S. they're simply saying you had some people here that's been rejected their test is actually not irrevocable liability they're not focusing on matching they're saying there's a different test that this court should apply they're saying we have purchase orders placed from the U.S. and we have some other things, there's some computer servers and other things those have not, are not relevant to the question of irrevocable liability there's one question of irrevocable liability, where does matching occur it occurs on this platform which they do not place within the United States and have disclaimed saying that this is a U.S. platform so based on their, what they put in their complaint and the terms of usage and this court's rulings, I don't think there's any basis upon which the district or this court could conclude that there was a domestic transaction because there's not an allegation that it was matched in the U.S. or that it only could have been, certainly not that it could have only been matched in the U.S. there's no allegation there so I think they've conceded those points I did want to touch on the jurisdictional point but I'm happy to answer any additional questions I do want to say, they did spend some time talking about their two arguments were on extraterritoriality in terms of the domestic nature of the alleged domestic nature of the transactions, they had alleged two things their argument is twofold first they say they have this kind of well the purchase order is placed from the U.S. and there's some additional factors and you should look at those that is not consistent with the Supreme Court I mean the Second Circuit's authority the absolute activist the fact that you submit orders the fact that you allege that the orders came from the U.S. the fact that computer servers in the U.S. were involved in processing some aspect of the transaction that has not been held to be the test for irrevocable liability the test has been where matching occurs and again they fail to allege what they need to allege and in fact disclaim that and the second thing is they say they've got this theory about validation on the nodes of the blockchain that's not alleged in the complaint they came up with this theory on appeal they can't amend their complaint on appeal and they say they did allege it but when you look at the paragraphs of the complaint that they cite they're only sort of generic background information about how blockchain works they don't say the plaintiff's purchases became irrevocable when they were validated on nodes the complaint doesn't even mention node and it doesn't even define the concept of validation at most it sort of says validation some kind of after the fact step like clearing or settlement and in any event they don't even allege they don't actually allege that the transactions here were on chain on the blockchain or that they were recorded on the blockchain or that they were subject to validation but in any event even if they say that these transactions and this is somewhat relevant to the question asked earlier they say that the transactions are recorded on the blockchain they cite an article and they say and they rely on that for all this theory since they don't have anything in their complaint and that article says transactions recorded on the blockchain are validated by every node worldwide and that any computer anywhere can download the software and become a node and that certainly doesn't support the idea that even validation occurs in the United States and in any event they don't allege, the critical thing is they don't allege and they can't and it's inconsistent with second certical authority that validation has anything to do with irrevocable liability and that's clear from the terms of usage, it doesn't the only issue with respect to irrevocable liability is matching Are you going to talk about timeliness? I'm sorry? Are you going to talk about timeliness? Unless your honor has questions I wouldn't but I guess one point that came up I would address which is the section 12 claim is time barred and your honor had a question about a sale versus an offer there's no sale alleged here they're not alleging as your honor pointed out that Binance passed title of the tokens to them this was a, they matched a buyer and a seller they didn't sell the tokens so the only argument Does Binance take possession of the tokens as part of the transaction? I'm not sure I know the answer to that question I mean the terms of service 605 I mean they moved them from one crypto wallet to another right? Well the language of the terms of service to conclude a transaction you authorize Binance to temporarily control the digital currencies involved in your transaction Yes to move them from one crypto wallet to another So this would have to be an offer claim which would be based on solicitation the critical point there is they keep talking about the one year statute and they keep talking about it in one year statute limitations being triggered when they made a purchase but that's not the issue the only question is from solicitation Your argument is that there is no claim there right? Right, there's no claim Is it that it's untimely or there's no claim? Both, it's untimely because they didn't make a purchase within one year of the solicitation and so you don't run the statute limitations off the sale you run it off of what they allege to be an offer so it was clearly time barred but I think the question there is every time they argue it they in a sense read the offer portion and the solicitation portion of section 12 out of the statute Well I understood counsel to say that relying on authority from Judge Friendly among others that there wouldn't be a claim that would be recognized under article 3 as within the court's jurisdiction for mere solicitation that the claim doesn't accrue by virtue of solicitation even if solicitation is mentioned in the statute but that the claim would accrue only when the plaintiff has suffered a harm which would happen when there is a purchase and not merely when there is a solicitation The way I would address that is that it goes back to Judge Nathan's question I don't think that there is either a claim and if there is a claim it's not time barred because I would say that sale would have to occur within the one year so if they have solicitation but they don't have a sale within the one year then the statute both doesn't apply and they're time barred I would say that there were sales within one year of bringing the complaint I'm sorry miss I understand the plaintiff's position to be that there are sales within one year of the bringing of the complaint even if they are not within one year of the solicitation and counsel added that an exchange which took a commission upon the sale by a third party to the plaintiff that the exchange in those circumstances would be a statutory seller if it took a commission while hosting the transaction between the two third parties that buy and sell to one another I don't think that's correct your honor because they don't allege that Binance actually passed the title of the tokens to them and in exchange you don't actually where you're matching these you don't actually pass title they're not a seller in that chain the seller is the token who's offering it and the buyer is the party that accepts that offer so I don't think that there's actually a seller claim for that reason and what I would say is if they don't execute a sale within a year of solicitation which is their offer claim then there is no claim and it would be any claim that they any sale that occurred more than one year after solicitation the statute makes the sale an offense as well as solicitation solicitation or sale but the argument was made that solicitation even if the statute mentions it would not give rise to an injury that would be cognizable under article 3 that's only when a purchase occurs that there is an injury that will give rise to a lawsuit and they argued that in this case some of the purchases that they are alleging some of the sales occurred within one year of bringing the lawsuit I don't think they're alleging that any of the sales occurred within one year of the solicitation I know and I think that's stated within one year of bringing the lawsuit not within one year of solicitation the statute doesn't talk about there needs to be less than a year between a solicitation and a sale well there are two different elements of the statute they don't have a sale they don't have a claim that is true but the statute begins to run against someone who makes an offer from the date they solicit the offer so the point would be doesn't that convert the statute of limitations into a statute of repose and we have a statute of repose in section 13 which is longer well I think it would actually not it would convert I think what it would be doing in the way the statute is intended and is written is that if you don't make a purchase within the one year of solicitation then it's time barred so in other words you can solicit a sale and if nobody buys within one year then there's no claim under the statute I don't think that's a repose it's almost like there's no damages there's no injury from the mere solicitation doesn't mean that the statute only runs from the sale just because there's not an injury the injury hasn't crystallized in connection with the securities transaction what it's saying is the court I mean the congress did not say it runs from the date of the sale it's from the date of solicitation in connection with an offer where did congress say that well I think it said the language is violation isn't it yes the violation is solicitation in this case but that was true in Diskin the judge friendly decision which is binding so how do you distinguish that that case is factually different because there was both a solicitation and a sale and in fact I believe at the time of the solicitation the securities weren't even available for sale so the claim there in effect was a sale claim not necessarily a solicitation claim because at that point when they the confounding factor is you have both a solicitation and a sale and at that time the solicitation there was not a security being purchased in this case it's alleged that at the time of solicitation sales could have been made but were not for more than one year and I think rather than converting it to a statute of repose I think it would be contrary to the language of the statute that says that the period of limitations begins to run from the violation and the violation is solicitation and not a sale it would essentially read out of the statute the idea that the statute could run based on the violation the only violation it would run from according to their theory the only violation the statute would begin to run from is from the date of sale and we think that's contrary to the legislative intent when it says from the violation Congress could have said it runs from the date of sale Congress didn't say that it says it runs from the date of the violation Isn't sale identified as one of the ways in which the statute can be violated? Yes Another way is solicitation and we would submit what they've alleged here is a violation based on solicitation not actually a sale and they do not and cannot allege that there was actually a sale How about very briefly on jurisdiction Thank you The weight of the authority is that a motion to compel arbitration does not implicate the court's subject matter jurisdiction An agreement to arbitrate is in essence a form selection clause and under the Supreme Court authority in Atlantic Marine the appropriate way to enforce foreign selection clauses is through the doctrine of form non-convenes and that is what we argue to the district court We argue that the arbitration provision in the terms of use should be enforced through a motion to dismiss on form non and a foreign selection clause has no relevance as the 8th circuit said in the Benkelman case has no relevance to the question of whether a given case satisfies constitutional or statutory definitions of jurisdiction In addition to the 8th, the 7th, the 3rd, the 1st circuits have all agreed with that and the 5th circuit is the only circuit that's gone the other way and the 5th circuit in Gilbert v. Donahue which is cited by this panel two days ago in their order there really wasn't much reasoning and they said that a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to 12b.1 when the party's dispute is subject to binding arbitration but notably the next year in Ruiz v. Donahue the 5th circuit said although in Gilbert we spoke in terms of subject matter jurisdiction we used the term imprecisely mandatory grievance and arbitration provisions and contracts such as the agreement in Gilbert are waivable and therefore do not affect this court's subject matter jurisdiction an agreement to arbitrate is form selection and doesn't impact subject matter jurisdiction so the only circuit that had gone the other way has now reversed itself and I would say just to be clear we did not move below under 12b.1 we did not take the position that the court lacked subject matter jurisdiction under 12b.1 as a result of the arbitration provision we said that was a form non convenes issue consistent and we cited the Supreme Court's authority in Atlantic Marine we did reference 12b.1 in our motion but that was because there was a standing issue and as this court has said a standing issue should be brought as a 12b.1 motion and that's the procedural route and that as you say if a plaintiff brings a suit against the defendant with respect to a claim that is governed by an arbitration agreement the defendant can perfectly well not plead the arbitration agreement can simply answer the complaint and the case will proceed the court may never find out that there was an arbitration agreement on the contrary the defendant could ask to enforce the arbitration agreement and tell the court that it should send the case to arbitration or refuse to adjudicate then it could change its mind and say well no we'll take that back we'll let this case go forward I don't see how it could implicate how the presence of an arbitration agreement could logically mean that the court doesn't have subject matter jurisdiction over it that is what a number of circuits have in fact also said agreeing with that position your honor our position is that and I should just say the standing issue that we raised had to do with the fact that they had some tokens alleged in the complaint but no purchaser of them that was the standing issue of the 12b1 issue you also raised lack of personal jurisdiction with respect to some of the defendants I believe which probably also should have been addressed but it doesn't cross cut all of the defendants so it seemed less pressing to me than the arbitration issue yes and the reason I bring up the point that we did not raise it for 12b1 it's not as if we asked the district court to dismiss for lack of subject matter jurisdiction because of the arbitration provision and that Judge Carter ignored it that is not the case obviously a court can always decide for itself its own subject matter jurisdiction and raise it to espante but the point we raised in that is it's not like we made a motion and the judge failed to address the subject matter jurisdiction point we didn't raise it as a subject matter jurisdiction point we raised it as a form non that's one important point the other important point is obviously the court has a case pending that was argued last month and while I'm against holding that an arbitration provision deprives the court of subject matter jurisdiction obviously if the second circuit speaks on that point that would impact our position certainly in later cases but in this case we don't think that the weight of authority suggests that we say the weight of authority outside this circuit does not suggest that it's a subject matter jurisdiction point thank you counsel Mr. Giordano thank you your honor Jordan Goldstein plaintiffs I probably don't need equivalent time to what counsel took up but I do have a number of points I'd like to make the first counsel spent quite a bit of time in his argument attacking the fact that according to him we did not plead that Binance was a domestic exchange and he took the position that without pleading that Binance was a domestic exchange there was some inconsistency between the position we're taking that these transactions were domestic transactions I would refer the court to A253 A254 and A255 so that's the paragraphs in our amended complaint begins at number paragraph 326 where we plead and this is the heading Binance is a domestic securities exchange so the argument that was just made that we did not plead that Binance is a domestic securities exchange is flat out incorrect we plead it was a domestic securities exchange we continue to believe it's a domestic securities exchange we also believe that the transactions are domestic transactions under the test set forth in Morrison and that's what we've focused on on the appeal but we have not backed away one iota from our argument that Binance is a domestic securities exchange that's the first point second point in the Choi case Choi made clear that there can be a transaction on a foreign exchange in that case an exchange in Korea but if it is matched on U.S. computers it is a domestic transaction here we've alleged and this is A425, A170, A171 that all or most of these transactions occurred over U.S. computer infrastructure tended by U.S. employees so the fact that even if it were a foreign exchange that would not be dispositive here we've certainly alleged the opposite so you're saying that under Choi if you have a a transaction more or less like the Morrison business which was a dispute between Australians on one side Australians on the other side involving an Australian security on an Australian exchange if the if the matching occurred on computers in the United States that would become subject to the U.S. securities I do think there's a fair reading of Choi for that I don't think you'd have to reach that limit case where everyone is foreign and the only thing occurring is the matching in the U.S. here all the plaintiffs as we've pled transacted from within the U.S. so that would be a different case your honor clearly third point in terms of this point about validation which counsel spent a lot of time on Binance has conceded for purposes of this motion that the transactions occurred within its computer infrastructure not on the blockchain we have clearly alleged in the complaint paragraphs 24 and 25 that that infrastructure is predominantly located in the U.S. so whether the test is title passing under absolute activist or whether the test is matching under the Choi type expansion of it under either approach this would be domestic under Morrison in terms of this point about and this goes Judge Nathan to your question about whether or not Binance sold the tokens if the claims are reinstated we do intend to seek the ability to amend our complaint before the district court to allege more clearly that because Binance is a centralized exchange it does take title to the tokens and therefore it is a direct seller not simply a statutory seller from the offer prong of 12A1 but a direct seller under 12A1 again that is not clearly alleged in the complaint that is something we would need to seek leave from the district court to do but that certainly is our position. Is this not pertinent to what is before us now? Agreed your honor, simply responding to counsel's point and then finally on this point just to finish with timeliness Diskin and Wiggin I think are very clear about how accrual works and I believe the courts city of Pontic the NBIA opinion is also clear that absent the ability to bring a claim absent article 3 standing a claim does not accrue and there was no ability to bring a claim until these  and so when you look at the claim the sales were more than a year before as we've alleged and this is in the appellate record and we've included copies of the transaction history you can see when you just look at it beginning I think about A15 of the appellate record you can see numerous transactions within a year and so certainly those claims accrued within a year. Numerous transactions within a year of the bringing of the suit exactly your honor I'm happy to answer more but your statutory I mean there's Diskins which says what it says but your statutory argument is there is no violation until the claim accrues is that the argument yes yes I mean there's certainly no injury I don't if there were solicitation that never resulted in a purchase I have a hard time imagining what the claim would look like and I have an equally hard time imagining that this court would permit it to go forward happy to answer more questions happy also to rest thank you counsel thank you to both counsel for your excellent argument the matter is submitted and we'll take it under consideration and we'll turn